## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL KNOTTS, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Knotts, by his attorneys, alleges, upon personal knowledge as to his own acts and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, as follows:

### INTRODUCTION

1.      This is a class action brought by Plaintiff against Defendant Nissan North America, Inc. ("Nissan" or "Defendant"), on behalf of all current and former owners and lessees of model years 2012 and 2013 Nissan Versas that are equipped with a continuously variable automatic transmission ("CVT(s)") ("Subject Vehicle(s)" or "Vehicle(s)") (hereinafter the "Class," as defined below).

2.      A CVT is a modified automatic transmission that employs a single, adaptable belt and a dual-pulley mechanism.  It is designed in such a way that the "drive pulley" and "driven pulley" work opposite one another, constantly creating different gear ratios, allowing for smooth acceleration and deceleration.

3.     Nissan advertised and continues to advertise CVTs on its website as a "next-generation" transmission, designed to "provide smoother performance, quicker acceleration, and better fuel economy than ever before."   Nissan, Performance, https://www.nissanusa.com/cars/ versa-sedan/versions-specs/version.1-6-s-plus.html (last visited November 7, 2017).

4.     At all relevant times, Nissan has advertised, marketed, and warranted the Vehicles that are the subject of this action.

5.     The Subject Vehicles were sold or leased pursuant to express and implied warranties.  Nissan expressly provides its customers with a three-year, 36,000-mile limited vehicle warranty and a five-year, 60,000-mile powertrain warranty on all of its vehicles (the "Warranty").  Nissan, Warranty Information Booklet p. 6 (2012).  The Warranty "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan" specifically including the engine, transmission, drivetrain, and restraint system.  *Id.*

6.     The Warranty explicitly covers the powertrain, covering the "Engine, Transmission and Transaxle, Drivetrain, and Restraint System," as well as the component parts of those systems, assuring customers that Nissan would repair covered components, such as the transmission, that were defective.  Warranty Information Booklet p. 6.  The powertrain Warranty included the "Transmission and Transaxle Case and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing A/T cooler, and electronic transmission controls."  *Id.*

7.     Unbeknownst to Plaintiff and the Class, the CVTs were defective, routinely failing both within and shortly after the expiration of the Warranty.  The defect is particularly problematic because when the CVTs fail, the Subject Vehicles lose most, if not all, of their ability to accelerate, giving rise to serious safety risks to the driver, passengers, and other drivers on the road.

8.     Nissan knew or should have known that the CVTs were (and are) defective, not fit for their intended purpose, and unsafe when used as intended.  Nevertheless, Nissan has failed to disclose the defective CVT to Plaintiff and the Class members, both before and after purchase.

9.     Had Plaintiff and the other Class members known about the defective CVTs at the time of purchase or lease, they would not have purchased or leased the Vehicles, or would have paid less for them.

10.     This action is brought to remedy violations of state consumer protection and warranty statutes in connection with Defendant's misconduct, including its concealment of material facts concerning the performance history and propensity for failure and malfunction of the CVTs during the distribution, marketing, sale, advertisement, warranting, and customer service performed with respect to the Subject Vehicles and CVTs.

11.     Plaintiff asserts claims, individually and on behalf of the Class, for violations of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), as well as for breach of express and implied warranty under Minnesota law.

12.     Plaintiff seeks injunctive relief, actual damages, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiff and the Class as defined herein.

## THE PARTIES

13.     Plaintiff is, and at all times relevant to this action has been, a resident of Brooklyn Park, Minnesota.  Plaintiff, thus, is a citizen of Minnesota.  On or about October 24, 2012, Plaintiff purchased a new Nissan Versa from Morrie's Nissan, an authorized Nissan dealership located in Brooklyn Park, Minnesota.  The Vehicle was built with a CVT.

14.     Nissan is a California corporation with its principal business office in Sacramento, California, and its North American headquarters located in Franklin, Tennessee.  Thus, Defendant is a citizen of both California and Tennessee.  Nissan also has over a dozen authorized dealerships in Minnesota.  Nissan does business throughout Minnesota, including throughout this judicial district.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1332(d)(2), because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interests and costs, and this matter is a class action in which Class members are citizens of a different state than that of Defendant.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims took place within this district and Plaintiff purchased the Subject Vehicle in Minnesota.

## FACTUAL ALLEGATIONS

17.     This class action is brought on behalf of all current and former owners and lessees of the Subject Vehicles.

18.     The Subject Vehicles are marketed, sold, and warranted by Nissan through its established network of licensed dealers and distributors.

19.     The CVT in each of the Subject Vehicles is prone to failure and malfunction, and does substantially fail and malfunction, leading to an inability to accelerate and an inability for the driver to maintain control over the Vehicle.  As a result of the defect, Nissan's CVTs fail after an unreasonably low number of miles have been driven, often shortly after the expiration of the Warranty.  The typical repair cost for the problems caused by the defect, if not covered under the Warranty, is $3,500 to $4,000.  *See* 2012 Nissan Versa Transmission Problems, http://www.carcomplaints.com/Nissan/Versa/2012/ transmission/ (last visited November 7, 2017).

20.     Plaintiff and Class members reasonably expected that the CVTs in the Subject Vehicles would not be defective and, that if they were defective, Nissan would repair the defect pursuant to the terms of the Warranty.  Plaintiff and Class members also reasonably expected that Nissan would provide them notice of any safety defects present in the Vehicles.

21.     Prior to and during the course of marketing and selling the Subject Vehicles to Plaintiff and Class members, however, Nissan failed to disclose the known CVT safety defect to consumers and continues to fail to disclose the defect to this day.

**Nissan's Knowledge of the Defect**

22.     Nissan was aware of the CVT defect prior to bringing the Vehicles to market, as any type of meaningful pre-production testing conducted by Nissan would have provided Nissan with knowledge of the defect.  Further, Nissan was further put on notice regarding the existence of the defect shortly after the Vehicles were brought to market (and prior to many Subject Vehicles being sold) as a result of receiving customer complaints (1) directly, (2) through its authorized dealers, (3) through complaints made to the National Highway Traffic Safety Administration ("NHTSA"), and (4) through the public dissemination of complaints publicly posted on online forums.

23.     Customers have expressed their concern and dissatisfaction with the defective CVTs on many forums, including as formal complaints to NHTSA.  *See* Search Results, Complaints, NHTSA, https://www.nhtsa.gov/vehicle/2012/NISSAN/VERSA/4%252520DR/FWD  (last  visited Nov. 7, 2017).  Owners of the 2012 Nissan Versa filed numerous complaints with NHTSA, including the following:

    a.  "THE CONTACT OWNS A 2012 NISSAN VERSA. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 55 MPH, **THE VEHICLE STALLED** AS THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT MENTIONED THAT THE FAILURE RECURRED ON TWO OCCASIONS. THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE **POWER TRANSMISSION NEEDED TO BE REPLACED**. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VEHICLE WAS REPAIRED TWICE BUT THE FAILURE RECURRED AFTER EACH REPAIR. **THE APPROXIMATE FAILURE MILEAGE WAS 12,000** AND THE CURRENT MILEAGE WAS 19,000."
    NHTSA ID Number: 10544261
    Date of Incident: 02/07/2013

b. "WHEN DRIVING DOWN THE HIGHWAY, MY VERSA WENT INTO NEUTRAL BUT THE SHIFT STILL SAID D FOR DRIVE, **HAD NO ACCELERATION** TOOK TO DEALER AND THEY PASSED IT OFF AS NOTHING . . . THEN A MONTH LATER HAD IT BACK AS IT DID THE SAME THING BUT THIS TIME I WAS GOING 25 MPH . . . . HAPPENED AGAIN BUT WAS IN OUR PARKING LOT AND JUST BLEW IT OFF AS THE DEALER WOULD JUST TELL ME NOTHING WAS WRONG. JUST YESTERDAY (6/29) AS I WAS TURNING INTO THE PARK I WORK AT IT SLIPPED BACK INTO NEUTRAL . . . . HAD TO PUSH IT TO A PARKING STALL AND CALL A TOW TO THE DEALER, ONCE AT THE DEALER THEY HOOKED IT UP TO THE COMPUTER AND 3 ERRORS FOR FUEL SYSTEM AND **1 ERROR FOR TRANSMISSION CAME UP**. I'M JUST THANKFUL THAT IT DIDN'T CAUSE AN ACCIDENT WHEN THIS HAS HAPPENED. I HAVE IT DOCUMENTED THAT IT HAS BEEN AT THE DEALER NOW 3 TIMES FOR THIS SAME ISSUE."
NHTSA ID Number: 10522513
Date of Incident: 3/1/2013

c. "THE CONTACT OWNS A 2012 NISSAN VERSA. WHILE DRIVING VARIOUS SPEEDS AND ATTEMPTING TO ACCELERATE BY DEPRESSING THE ACCELERATOR PEDAL, **THE VEHICLE FAILED TO ACCELERATE AND WOULD DECELERATE INSTEAD** WITHOUT WARNING. WHEN THE FAILURE OCCURRED ON 11/25/2013, THE VEHICLE WAS TAKEN TO KELLY NISSAN . . . WHERE IT WAS DIAGNOSED THAT THE **CONTINUOUSLY VARIABLE TRANSMISSION (CVT) NEEDED REPLACEMENT**. THE VEHICLE WAS REPAIRED. ON 7/31/2014, WHILE THE VEHICLE WAS UNDERGOING A ROUTINE OIL CHANGE AT TOWN CENTER NISSAN . . . , THE TECHNICIAN STATED THAT **THE CVT NEEDED REPLACEMENT**. THE PART WAS NOT REPLACED. THE MANUFACTURER STATED THAT THEY COULD NOT ASSIST BECAUSE **THE POWER TRAIN WAS OUT OF WARRANTY**. THE CONTACT STATED THAT THE FAILURE RECENTLY RECURRED ON 7/10/2017. THE VEHICLE WAS TAKEN DON FRANKLIN AUTO MALL . . . WHERE IT WAS DIAGNOSED THAT THE CVT NEEDED REPLACEMENT. THE VEHICLE WAS NOT REPAIRED. THE CONTACT MENTIONED THAT **THE FAILURE PERSISTED INTERMITTENTLY EVER SINCE THE CVT WAS REPLACED IN NOVEMBER OF 2013**. THE CONTACT STATED THAT THE MANUFACTURER WAS NOTIFIED ONCE AGAIN OF THE FAILURE, BUT DID NOT ASSIST. THE **FAILURE MILEAGE IN NOVEMBER OF 2013 WAS APPROXIMATELY 49,000**."
NHTSA ID Number: 11015187

Date of Incident: 11/25/2013

d. "NISSAN VERSA 2012. **THIS IS MY SECOND CVT TRANSMISSION REPLACEMENT**. I RECEIVED THE FIRST TRANSMISSION REPLACEMENT IN DECEMBER 2013 AND IT HAS BROKEN AGAIN IN MAY 2014. THE VEHICLE GOT STUCK IN GEAR AND WOULD NOT SHIFT. **IT ACCELERATED AND DECELERATED WITHOUT MY FOOT ON THE GAS PEDAL**. . . . IT'S VERY UNSAFE TO DRIVE. THE AIRBAG AND CHECK ENGINE LIGHTS CAME ON. I TOOK MY CAR TO THE DEALER AND GOT THE RUN AROUND. DON' T KNOW WHAT CAUSED THE PROBLEMS AND NEED MORE TIME TO RUN TEST. **THE SECOND TRANSMISSION IS UNDER WARRANTY AND THE DEALER GAVE ME EVERY EXCUSE TO NOT FIX MY CAR**. I WAS TOLD, BY THE DEALER, AFTER SEVEN DAYS OF WAITING ON REPAIRS, THAT THEY (DEALER) **WERE WAITING FOR A RESPONSE FROM NISSAN HEADQUARTERS TO RUN TEST**. . . . THE DEALER SAID THAT THEY COULD NOT HELP ME WITH A RENTAL UNTIL NISSAN GAVE THE DEALER AN ANSWER AS FAR AS WHAT TEST TO RUN AND IF TO REPAIR THE VEHICLE, WHICH IS UNDER WARRANTY. . . . THESE CVT TRANSMISSIONS HAVE BEEN A LONG, ONGOING PROBLEM WITH NISSAN. THIS IS A NIGHTMARE FOR ALL NISSAN OWNERS AND NISSAN SHOULD BE HELD ACCOUNTABLE FOR **KNOWING ABOUT THESE ISSUES AND IGNORING THEIR ISSUES**."
NHTSA ID Number: 10596139
Date of Incident: 12/2/2013

e. "I WAS DRIVING 75 MPH . . . **WHEN THE VEHICLE SUDDENLY LOST POWER. I WAS ONLY ABLE TO KEEP IT AT 60MPH BY PRESSING THE ACCELERATOR TO THE FLOOR.** I WAS ONLY ABLE TO RESUME NORMAL DRIVING SPEED BY TAKING MY FOOT OFF THE ACCELERATOR AND THEN PRESSING IT TO THE FLOOR AGAIN. I'VE OWNED THIS CAR FOR 2 YEARS AND HAVE HAD PROBLEMS WITH THIS CAR FOR THE LAST 8 MONTHS. . . . TWO MONTHS AGO IT STARTED HESITATE-SURGE BEHAVIOR, LIKE IT WAS SEARCHING FOR THE RIGHT GEAR, AT FREEWAY SPEED LIMITS OR WHEN ACCELERATING TO FREEWAY OR CITY SPEED LIMITS. **SOMETIMES IT'S SO STRONG I'M AFRAID I'M GOING TO LOSE CONTROL OF THE VEHICLE.** FROM WHAT I'VE READ ONLINE, NISSAN HAS HAD PROBLEMS WITH ITS CVT FOR YEARS, YET I'VE BEEN UNABLE TO GET 3 NISSAN DEALERS IN 3 DIFFERENT TOWNS TO SERVICE THIS PROBLEM. ONE SAID THEY COULDN'T REPRODUCE THE PROBLEM. THE OTHER TWO WOULDN'T EVEN GIVE ME AN APPOINTMENT.

THEY BASICALLY SAID THIS IS JUST HOW THIS TRANSMISSION WORKS, LIVE WITH IT."
NHSTA ID Number: 10565392
Date of Incident: 2/21/2014

f.   "THE CONTACT OWNS A 2012 NISSAN VERSA. WHILE DRIVING AT APPROXIMATELY 10 MPH, **THE FUEL PEDAL WAS DEPRESSED BUT THE VEHICLE WOULD NOT ACCELERATE.** THE FAILURE RECURRED THREE TIMES. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT **THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED BUT THE FAILURE RECURRED.** THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. **THE FAILURE MILEAGE WAS 28,000.**"
NHTSA ID Number: 10695383
Date of Incident: 5/15/2014

g.   "TRANSMISSION FAILED AND NEEDS TO BE REPLACE[D]. **NISSAN REFUSES TO REPAIR SINCE THE CAR IS ONLY 7000 MILES OUTSIDE THE WARRANTY**. THE 2007-2010 VERSA HAD THE SAME ISSUES AND WARRANTY WAS EXTENDED TO 120,000 MILES ITS THE SAME CAR SAME MODEL AND WAS TOLD BY NISSAN THAT THEY ARE UNABLE TO COVER REPAIRS SINCE I PURCHASE THE VEHICLE WITH A WARRANTY AT 60,000. . . . THE VERSUS [sic] ARE EXPERIENCING THE SAME ISSUES AND NISSAN REFUSES TO FIX OR PAY TO REPAIR A DEFECTED CAR."
NHTSA ID Number: 10607698
Date of Incident: 6/30/2014

h.   "DRIVING . . . APPROX MPH 50 **CAR SLOWS DOWN AND STALLS COMING TO A COMPLETE STOP**. SHUT OFF CAR PUT IN PARK, TURN IT BACK ON, CARS MOVES EXTREMELY SLOW THOUGH I AM ACCELERATING ON GAS PEDAL. SEEMS TRANSMISSION IS NOT ENGAGING IN ANY GEARS (AUTOMATIC TRAN). BEING ABOUT 6 MILES FROM HOME, HAVE TO SHUT CAR OFF APPROX. EVERY 5 BLOCKS TO GET CAR MOVING AGAIN. ON PARKWAY ALMOST GET REAR ENDED NUMEROUS TIMES AS CAR CONTINUED TO STALL. SPOUSE IN CAR, THANK GOD CHILDREN NOT."
NHTSA ID Number: 10616614
Date of Incident: 7/26/2014

i.   "THE CONTACT OWNS A 2012 NISSAN VERSA. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 65 MPH, THE ENGINE RPMS DECREASED AND **THE VEHICLE FAILED TO**

**ACCELERATE**. THE VEHICLE WAS RESTARTED AND THE FAILURE RECURRED. THE VEHICLE WAS TAKEN TO THE DEALER, WHO DIAGNOSED THAT THE TRANSMISSION FLUID MIXED WITH THE COOLANT IN THE TRANSMISSION. AS A RESULT, **THE TRANSMISSION AND THE RADIATOR NEEDED TO BE REPLACED.** THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. **THE APPROXIMATE FAILURE MILEAGE WAS 71,000**."
NHTSA ID Number: 10668378
Date of Incident: 12/18/2014

j.   "WHEN DRIVING FOR ABOUT AN HOUR, IF YOU STOP AT A TRAFFIC CONTROL DEVICE, **ONCE YOU TRY TO ACCELERATE, THE CAR WILL NOT MOVE. . . . IT DID THIS SEVENTEEN (17) TIMES AND 6 OF THEM WERE ON THE INTERSTATE IN HEAVY TRAFFIC. I ALMOST GOT REAR ENDED BY A CAR COMING UP BEHIND ME BECAUSE I COULDN'T MOVE THE CAR OUT OF THE ROAD IN TIME**. I HAD TO SHUT THE CAR OFF, WAIT A FEW SECONDS AND TURN IT BACK ON TO GET IT TO MOVE . . . . THIS HAS HAPPENED EVERY DAY UNTIL I FINALLY TOOK IT INTO THE SHOP AND **THEY SAID IT WAS THE TRANSMISSION**."
NHTSA ID Number: 10703691
Date of Incident: 1/14/2015

k.   "PURCHASED NEW FROM NISSAN DEALER**. 35 MONTHS LATER, JUST AROUND 40,000 MILES**, NOTICE JERKY MOVEMENTS FORWARD AND BACKWARDS AT FREEWAY AT APPROX 60MPH. TOOK TO DEALER SERVICE DEPT AND NOTHING FOUND. HAPPENING MORE FREQUENTLY AND AT LOWER SPEEDS TOO. RETURNED 8 WEEKS LATER AND WAS TOLD **IT WAS THE CVT TRANSMISSION**. WAS TOLD REPLACED BY NEW ONE. 4 DAYS LATER **CAR STARTED BUT WOULD NOT MOVE FORWARD**. HAD TO HAVE TOWED AND WAS TOLD THE NEW TRANSMISSION NEEDED REPLACING AGAIN. BOTH REPAIRS COVERED UNDER WARRANTY. **CONCERNED THIS MAY HAPPEN AGAIN AND BE DANGEROUS ON FREEWAY OR BE RIGHT AFTER WARRANTY IS OVER AND BE COSTLY.** READ LOTS OF PROBLEMS WITH CVT TRANSMISSIONS. THIS CAR IS NOT DRIVEN IN HARSH CONDITIONS OR STOP AND GO TRAFFIC SO VERY CONCERNING."
NHTSA ID Number: 10721179
Date of Incident: 3/5/2015

l. "**MY CAR WILL NOT MOVE WHEN THE GAS IS PRESSED**, IT STUTTERS AND VIBRATES THEN JERKS. THE TRANSMISSION CATCHES THEN RPM HIT 7500 VERY UNSAFE. THIS HAPPENS EVERY TIME I STOP AND GO. TOOK IT TO NISSAN **THEY SAID THAT THEY COULD NOT REPLICATE THE PROBLEM THEREFORE COULD NOT FIX IT**."
NHTSA ID Number: 10713107
Date of Incident: 4/27/2015

m. "THE CONTACT OWNS A 2012 NISSAN VERSA. WHILE DRIVING DOWN A BUSY ROAD AT 20 MPH, THE VEHICLE EXPERIENCED A LOSS OF POWER. THE VEHICLE COULD DRIVE IN REVERSE, BUT **COULD NOT FUNCTION IN DRIVE**. THE VEHICLE HAD TO BE TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT **THE TRANSMISSION MALFUNCTIONED**. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. **THE APPROXIMATE FAILURE MILEAGE WAS 63,000**."
NHTSA ID Number: 10725265
Date of Incident: 5/6/2015

n. "MY HUSBAND WAS DRIVING HOME FROM WORK IN OUR 2012 NISSAN VERSA. HE WAS ON THE HIGHWAY TRAVELING THROUGH A CONSTRUCTION ZONE AT APPROXIMATELY 55 MPH **WHEN THE CAR SUDDENLY CUT OUT ON HIM. HE PUMPED THE GAS PEDAL BUT THE CAR WOULD NOT ACCELERATE OVER 20 MPH**. HE PULLED THE CAR OFF AT THE CLOSEST EXIT. IT WAS TOWED TO A NISSAN DEALERSHIP WHERE IT WAS EVALUATED. **WE WERE NOTFIED THAT A TOTAL TRANSMISSION REPLACEMENT WAS NECESSARY**. I CONTACTED NISSAN AND WAS INFORMED THAT **NISSAN TOOK NO RESPONSIBILITY FOR THE TRANSMISSION FAILURE BECAUSE THE WARRANTY HAD EXPIRED**. HOWEVER, IN THE SCHEDULED MAINTENANCE PROVIDED IN THE OWNER'S MANUAL THE FIRST TRANSMISSION RELATED MAINTENANCE DOES NOT OCCUR UNTIL 60,000 WHEN THEY RECOMMEND CHECKING THE TRANSMISSION FLUID. **NISSAN CLAIMS THEY HAVE NO WAY OF VERIFYING THAT VEHICLE MAINTENANCE WAS COMPLETED BECAUSE WE DID NOT HAVE THE MAINTENANCE COMPLETED AT A NISSAN DEALERSHIP**. I OFFERED TO PROVIDE OUR RECORDS OF MAINTENANCE FROM OUR PROVIDER BUT NISSAN WAS NOT INTERESTED IN SEEING THEM."
NHTSA ID Number: 10745066
Date of Incident: 7/22/2015

o. "THE CONTACT OWNS A 2012 NISSAN VERSA. WHILE ACCELERATING FROM A STOP, **THE VEHICLE HESITATED TO ACCELERATE. THE FAILURE RECURRED MULTIPLE TIMES.** WHILE DRIVING AT APPROXIMATELY 35 MPH, THE GEAR SHIFTER SHIFTED FROM DRIVE TO NEUTRAL INDEPENDENTLY. THE FAILURE RECURRED MULTIPLE TIMES. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE **TRANSMISSION NEEDED TO BE REPLACED**. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE **APPROXIMATE FAILURE MILEAGE WAS 76,000**."
NHTSA ID Number: 10779885
Date of Incident: 7/30/2015

p. "I HAD THE 60,000 SERVICE DONE ON THIS CAR AT MY LOCAL NISSAN DEALERSHIP ON DEC 14, 2015. PART OF THAT SERVICE INVOLVED INSPECTING THE CONTINUOUSLY VARIABLE TRANSMISSION FLUID. APPARENTLY IT WAS OK. **SIX DAYS LATER MY DAUGHTER WAS DRIVING IT TO NEW ORLEANS AND IT STOPPED IN THE MIDDLE OF THE INTERSTATE**. LUCKILY, NOBODY WAS CLOSE BEHIND HER AND SHE WAS ABLE TO DRIFT IT TO THE SIDE OF THE HIGHWAY. WE HAD IT TOWED TO A NEW ORLEANS AREA DEALER AND ARE BEING TOLD THAT **THE TRANSMISSION NEEDS TO BE REPLACED AT A COST OF $3900. WE WERE ALSO TOLD THAT THE CAR IS OUT OF WARRANTY AND NISSAN WOULD NOT HELP WITH THE REPAIR. THIS IS A 4 YEAR OLD CAR WITH 65,000 MILES ON IT**. A QUICK SEARCH OF THE INTERNET SHOWS SEVERAL PEOPLE ALSO HAVING TRANSMISSION FAILURES AT ABOUT THAT SAME MILEAGE. SEVERAL HAVE HAD THE CAR STOP IN THE MIDDLE OF THE HIGHWAY JUST LIKE MINE DID."
NHTSA ID Number: 10811580
Date of Incident: 12/20/2015

q. "THE CONTACT OWNS A 2012 NISSAN VERSA. WHILE DRIVING APPROXIMATELY 20 MPH, **THE VEHICLE HESITATED WHEN ATTEMPTING TO ACCELERATE**. THE CONTACT MADE THREE ATTEMPTS TO ACCELERATE, BUT WAS UNSUCCESSFUL. THE VEHICLE STALLED AND WAS TOWED TO A CERTIFIED MECHANIC WHO STATED THAT **THE TRANSMISSION FAILED AND NEEDED TO BE REPLACED. THE DEALER STATED THAT THE VEHICLE WAS NO LONGER COVERED UNDER THE WARRANTY.** THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND

ADVISED THE CONTACT TO TAKE THE VEHICLE TO THE DEALER. THE CONTACT TOOK THE VEHICLE TO THE DEALER WHO CONFIRMED THE TRANSMISSION FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 80,000.
NHTSA ID Number: 10825837
Date of Incident: 02/07/2016

r. "**[CVT] TRANSMISSION FAILURE, TRANSMISSION WILL FAIL WITH NO WARNING**, THIS IS A DEADLY FLAW IN THE DESIGN OF THE TRANSMISSION, HUNDREDS COMPLAINTS ONLINE ATTEST TO THE NUMBER OF TRANSMISSION FAILURES IN DANGEROUS SITUATIONS. **MY TRANSMISSION FAILED AT A BUSY INTERSECTION ON A MAJOR 4 LANE ROAD WE WERE ALMOST HIT BROADSIDE AT A HIGH RATE OF SPEED THE OTHER DRIVER SWERVED TO MISS US AND I HAD TO PUSH THE CAR OUT OF TRAFFIC.** THIS IS A POTENTIAL DEADLY CONDITION. I WAS STOPPED AT A STOP SIGN WAITING ON TRAFFIC **WHEN TRAFFIC CLEARED I HIT THE ACCELERATOR THE CAR HESITATED AND SURGED ONTO THE HIGHWAY AND STOPPED IN THE TRAFFIC LANE WITH 65/70 MPH TRAFFIC COMING AT US**. THE FIRST CAR SWERVED TO THE DITCH SIDE AND MISSED US THE REST OF THE TRAFFIC SAW WHAT HAPPENED AND STOPPED AND WENT AROUND. THIS IS A VERY COMMON PROBLEM WITH THE TRANSMISSIONS IN NISSAN VEHICLES . . . ."
NHTSA ID Number: 11020646
Date of Incident: 08/25/2017

*Id.* (emphases added).

24.     In addition to the significant number of complaints lodged with NHTSA, the

Internet is replete with similar concerns about the CVTs on the Subject Vehicles:

a.   "THE CONTACT OWNS A 2012 NISSAN VERSA. THE CONTACT WAS DRIVING APPROXIMATELY 68 MPH WHEN THE **VEHICLE SUDDENLY BEGAN TO ERRONEOUSLY ACCELERATE AND DECELERATE BEFORE STALLING**. THE VEHICLE WAS DIAGNOSED AT THE DEALER BUT NO REPAIRS WERE PERFORMED. THE CONTACT WAS INFORMED BY THE DEALER THAT THE CVT INTERNAL CLUTCH WAS DAMAGED. THE MANUFACTURER WAS NOTIFIED BUT **NO SOLUTION WAS OFFERED**. THE FAILURE MILEAGE WAS 70,000." *Nissan Versa: 2012 Nissan Versa Problems & Complaints*, Auto Recalls for Consumers (Dec. 17, 2013),

http://www.arfc.org/complaints/2012/nissan/versa/?q=&page=24      (emphasis added).

b. "I have now had my car in two Nissan dealerships in the last two weeks for two different problems both related to the transmission with no help nor solution from Nissan. Now not only is my brand new car that I have only had for 14 months having issues it is **extremely unsafe to drive**. Headed home from work I noticed the car was starting to do the same thing I had had the car in the shop 4 days ago. Every time I went around a round-about when accelerating out of the intersection **the car was hesitating significantly to accelerate** after I had had the gas pedal down for a while. . . . We found out a week later that Nissan ended up putting a brand new transmission in our car. The tech told us that after they got the transmission out of that car it was in bad shape and not going to last us much longer. A transmission, we that **only had 42000 miles on it and was only 14 months old**. The transmission only had a little over 100 miles on it when we had bought it."      Transmission Failure: 2012 Nissan Versa, CarCompaints.com (Feb. 24, 2014) https://www.carcomplaints.com/Nissan/ Versa/2012/transmission/transmission_failure-3.shtml (emphasis added).

c. "The **cvt transmission started acting up around 30k miles** when the torque convertor was engaged while I put it in drive and the car jumped and died. After that, mileage went down. At 68k miles an engine code (P0740) came on for the torque convertor, my mileage went down to 30mpg and it had no power. Often running at 3500 rpms to drive 70mph. It is in the dealer shop still. Probably a transmission replacement will occur." Transmission Failure: 2012 Nissan Versa, CarCompaints.com      (June      27,      2014)      https://www.carcomplaints.com/ Nissan/Versa/2012/transmission/transmission_failure-3.shtml      (emphasis added).

d. "The **CVT failed at 67500 miles. Nissan is unwilling to provide any assistance since it is 7500 miles past warranty**. Research shows this transmission has been problematic. Even the CEO acknowledged problems in December 2013 and transferred an executive to the transmission manufacturer (JATCO) which is partially owned by Nissan. The executive was to provide oversight to fix the problems." Transmission Failure: 2012 Nissan Versa, CarCompaints.com (Jan. 5, 2015) https://www.carcomplaints.com/Nissan/ Versa/2012/transmission/transmission_failure-3.shtml (emphasis added).

e. "I BOUGHT RECENTLY **2012 NISSAN VERSA CAR WITH THEIR CVT TRANSMISSION. NOT EVEN AFTER 6 MONTHS OF USING THE CAR, IT COMPLETELY WENT OUT**. THE DEALERSHIP OFFERED TO REPLACE IT FOR $4300, WHICH IS ABOUT THE SAME AS MARKET VALUE OF THE CAR. AFTER READING MORE ONLINE, I FOUND OUT

THAT THIS IS REALLY COMMON ISSUE AND THIS TRANSMISSIONS GO OUT VERY OFTEN. ON TOP OF THAT THEY CAN'T BE REBUILD [sic]. NISSAN IS AWARE OF THEIR FAULTY TRANSMISSIONS AND THEY HAD RECALLS ON DIFFERENT MODELS, BUT ARE STILL AVOIDING ON THIS ONE." Nissan Versa: 2012 Nissan Versa Problems & Complaints, Auto Recalls for Consumers (Feb. 6, 2017) http://www.arfc.org/complaints/2012/nissan/versa/?q=&page=5 (emphasis added).

f. "I WAS TRAVELLING ON A HIGHWAY OUT OF TOWN WHEN **SUDDENLY MY CAR BEGIN TO SLOW DOWN AND WOULD NOT ACCELERATE PASSED 40MPH** AND MAKING A STRANGE NOISE. FINALLY ABLE TO GET IT OFF THE HIGHWAY, I TURNED OFF THE CAR. LOCATED A NISSAN DEALER AND DROVE THE CAR THERE. AT FIRST THE CAR SEEMED TO BE ONCE AGAIN NORMAL, BUT **AGAIN UNABLE TO ACCELERATE AT ALL PASSED 40MPH.** DEALER IS STATING THAT TRANSMISSION IS COMPLETELY GONE! I PURCHASED THE CAR BRAND NEW ON 2/12/2013. NOW 3 YEARS LATER THE TRANSMISSION IS GONE?? THE DEALERSHIP WANTED TO CHARGE 5000.00 TO FIX IT, BUT LOWERED THE PRICE TO 1800.00. **IT'S 6000 MILES PASSED THE WARRANTY** AND NOW WHAT? I NEED NISSAN USA TO BE RESPONSIBLE FOR THE TRANSMISSION DEFECT." Nissan Versa: 2012 Nissan Versa Problems & Complaints, Auto Recalls for Consumers (Mar. 20, 2017) http://www.arfc.org/complaints/2012/nissan/versa/?q=&page=5 (emphasis added).

25.     Nissan has no viable fix for the CVT defect, other than replacing the transmission after it fails. Unfortunately, the cost of the defect has been borne by Plaintiff and Class members.

26.     Despite its knowledge of the defect, Nissan marketed, sold, and leased Subject Vehicles built with the defective CVTs, while failing to disclose to Plaintiff and Class members that the CVTs are defective, and that the defect poses a significant safety threat. The CVT defect, associated safety concerns, and the lack of a pre-failure fix are material facts to a reasonable consumer in deciding whether or not to purchase or lease a

Subject Vehicle and how much to pay for a Subject Vehicle. Nissan should have disclosed these material facts to the public, but failed to do so.

27.     Nissan's failure to disclose and fix the defect in the CVT is especially egregious in light of the safety risks resulting from driving with a defective transmission, including an inability to accelerate and inability to maintain control over the Vehicle, thereby placing drivers, passengers, and others sharing the road at greater risk of accidents and harm. These safety risks are unquestionably material to a reasonable consumer in deciding whether or not to purchase a Subject Vehicle and, as such, Nissan should have disclosed this fact to the public, but failed to do so.

28.     At all relevant times, Nissan had exclusive possession of the information regarding the defective CVT and its propensity to fail and malfunction based upon, *inter alia*, Nissan's own testing, industry testing, and the numerous consumer complaints it received. These facts were material to Plaintiff and Class members and, as such, Nissan had a duty to disclose these facts to Plaintiff and the Class, but failed to do so.

29.     Had Nissan disclosed the material information regarding the defective CVT, Plaintiff and Class members either would not have purchased or leased the Subject Vehicles, or would have paid a substantially lower price for them. Nissan's conduct has imposed significant costs upon Plaintiff and Class members, not the least of which are the substantial out-of-pocket expenses incurred for repairs required to fix the defective CVT.

30.     The Society of Automotive Engineers, SAE International, reported on April 23, 2012, that Nissan had plans to replace the Versa transmission. The 2013 Versas were to be equipped with the new Jatco CVT7 (or APO), replacing the Jatco CVT-1, which the

2012 Versas were equipped with. *Jatco's next-gen CVTs bring high ratio spreads, more efficiency*, SAE International (Apr. 23, 2012, 07:34 EST), http://articles.sae.org/10947/; *see also* Press Release, Jatco, JATCO to participate in the Automotive Engineering Exposition 2012 (May 21, 2012), http://www.jatco.co.jp/english/release/2012/20120521_125.html.

31.     The new Jatco CVT7 installed in 2013 Versas "successfully improved acceleration in vehicle start," a problem that was rampant in the 2012 Versas equipped with defective CVTs. Press Release, Jatco, Jatco CVT7 attains 10 million units in global production (Aug. 25, 2016), http://www.jatco.co.jp/english/release/2016/20160825_664.html.

32.     Nissan's decision to replace the CVT-1 in the Subject Vehicles with the new CVT7 transmission for its 2013 Versa model further demonstrates that Nissan was aware of the defect in the Subject Vehicles at the time they were sold. And yet, Nissan did not disclose this defect, did not provide a fix for the defect, and continued selling Subject Vehicles equipped with defective CVTs until the 2013 model was released.

### Nissan's Warranty is Unconscionable

33.     The defect in the Subject Vehicles' CVT manifested either before or shortly after the expiration of the Warranty. The Warranty that Nissan provides is both procedurally and substantively unconscionable for several reasons. Procedurally, the Warranty is unconscionable because it was unilaterally drafted by Nissan, without any negotiation or opportunity for input from Plaintiff or any Class member. All terms of the express warranty, including the unilaterally imposed durational and damages limits, were

offered by Defendant on a "take it or leave it" basis and without affording Plaintiff or the Class members any meaningful choice in bargaining for the terms of warranty coverage.

34.     Substantively, the Warranty is unconscionable because it purports to cover all internal parts of the transmission, even though Nissan was aware, prior to sale of the Subject Vehicles, that the CVTs were defective.  Nissan possessed superior knowledge of the defective CVT prior to sale, but Nissan concealed and did not disclose the defect. Further, Nissan did not remedy the defect prior to sale or afterwards.  As such, the time and mileage limitations in light of that knowledge are substantively unconscionable because they shift the cost of a known defect to the consumer, without the consumer's knowledge.

35.     Nissan, as the warrantor and seller of the Vehicles, knew and failed to disclose at the time that it unilaterally imposed the terms of its express warranty, that the CVTs built into the Subject Vehicles were defective, and that the defect would manifest repeatedly.

36.     Defendant's knowledge of the defective CVT, the lack of any solution to the problem, the fact that the defect tends to manifest just barely outside the Warranty period, and Defendant's refusal to honor the Warranty when Plaintiff or Class members had any prior repair work completed at a non-Nissan repair shop, renders the Warranty illusory and unconscionable in relation to the CVT.  Under all of these circumstances, Nissan's provision of the Warranty to Plaintiff and Class members constituted an unlawful, unfair, and fraudulent business practice, and the Warranty fails of its essential purpose.

### Plaintiff's Experience with His Vehicle

37.    Plaintiff purchased his Nissan Versa on or about October 24, 2012, from Morrie's Nissan, an authorized Nissan dealership located in Brooklyn Park, Minnesota.

38.    Per the requirements of the Warranty, Plaintiff operated his Vehicle in a manner consistent with its intended use at all times.  Nevertheless, Plaintiff experienced a safety issue with his Vehicle, involving the inability to accelerate in traffic after braking at an intersection.  On one particular occasion, after having braked at a red light, Plaintiff attempted to accelerate across the intersection when the light turned green.  His Vehicle, however, would not accelerate beyond a crawl, causing him to block and delay traffic behind him and rendering him barely able to move the car into the shoulder of the road so that he could avoid the danger of moving so slowly at a traffic-heavy intersection.

39.    In or about March 2017, once Plaintiff noticed his acceleration problems were pervasive, he took his vehicle to Victory Auto Service & Glass in Brooklyn Park, Minnesota.  The mechanic at the time presumed it was a fuel injection issue.

40.    On or about April 25, 2017, when Plaintiff's Vehicle again would not accelerate at an intersection, the Vehicle was towed to Victory Auto Service & Glass, a repair shop in Brooklyn Park, Minnesota.  The shop recognized the problem was with the transmission.  The shop removed and replaced the transmission and the Nissan CVT transmission fluid.

41.    In the end of April 2017, Plaintiff contacted Nissan about his defective CVT, explaining his pervasive acceleration problems.  Nissan told Plaintiff it would not cover

the cost of the repairs under its Warranty because this issue manifested itself outside the Warranty period and he had repairs done by service providers other than Nissan.

42.     As a result of Nissan's failure to repair the known safety defect, Plaintiff was required to pay more than $3,300 to replace the defective CVT.  The total cost of towing the Vehicle rendered inoperable as a result of the defect to the repair shop, testing the transmission to assess the problem, removing and replacing the transmission, and replacing the Nissan CVT transmission fluid was $3,857.24.

43.     Plaintiff has been damaged and suffered ascertainable losses as a consequence of Nissan's misconduct alleged herein, including, *inter alia*, the more than $3,300 he paid to replace the defective CVT.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this class action on behalf of himself and all other similarly-situated members of the proposed Classes, which are defined as follows: :

**National Class:**  All current and former owners and lessees of the Subject Vehicles purchased or leased in the United States.

**Minnesota Class:**  All current and former owners and lessees of the Subject Vehicles purchased or leased in the State of Minnesota.

Excluded from the Classes are Defendant, as well as Defendant's affiliates, employees, officers, and directors, including franchised dealers; any person who is seeking damages for physical injury as a result of the defect at issue in this litigation; and the Judge(s) to whom this case is assigned.  Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveal that the Classes should be expanded or otherwise modified.

45.     This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

46.     Numerosity/Impracticability of Joinder: The Class members are so numerous that joinder of all members is impracticable.  Plaintiff reasonably estimates that there are thousands of Class members who purchased or leased the Subject Vehicles.  The precise number of Class members can be readily ascertained by reviewing documents in Defendant's possession, custody, and control.

47.     Commonality and Predominance: There is a well-defined community of interest and common questions of law and fact, which predominate over any questions affecting only individual Class members.  These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

      a.      Whether the CVTs are defective;

      b.      Whether Nissan knew that the CVTs were and are defective;

      c.      Whether Nissan omitted or concealed material facts from Plaintiff and the Class members regarding the defect inherent in the CVT;

      d.      Whether Nissan's conduct violated the MPCFA;

      e.      Whether Nissan has breached its Warranty;

      f.      Whether Nissan has breached any implied warranty;

      g.      Whether Plaintiff and the Class members have suffered damages as a result of Nissan's wrongful conduct and, if so, the appropriate amount thereof; and

h.      Whether Plaintiff and the Class members are entitled to equitable relief or other relief and, if so, the nature of such relief.

48.     Typicality: The representative Plaintiff's claims are typical of the claims of the Class members.  Plaintiff and all Class members have suffered the same injuries as a result of Defendant's wrongful conduct.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

49.     Adequacy: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

50.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. Furthermore, as the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them.  Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation presents the potential for inconsistent or contradictory judgments. There will be no difficulty in the management of this action as a class action.  A class action

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51.     Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## ESTOPPEL FROM PLEADING AND TOLLING OF
## APPLICABLE STATUTES OF LIMITATIONS

52.     Because the defects in the Vehicles are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Vehicles were defective until sometime after their purchase, despite the exercise of due diligence.

53.     Defendant knew the Vehicles were defective prior to the time of sale, and concealed that material information from Plaintiff and all of the Class members.

54.     As such, any applicable statutes of limitations have been tolled by Defendant's concealment of material facts and Defendant is estopped from relying on any such statutes of limitations.

## COUNT I
## Asserted on Behalf of the Minnesota Class
## (Violations of MPCFA, Minn. Stat. § 325D.44, *et seq*.)

55.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

56.     Nissan engaged in deceptive trade practices in the course of business, in violation of the MPCFA, in the following ways:

a.      Nissan violated Minn. Stat. § 325D.44(5) by representing that the Vehicles and the CVTs therein had characteristics, uses, and benefits that they did not have;

b.      Nissan violated Minn. Stat. § 325D.44(7) by representing that the Vehicles and the CVTs therein were of a particular standard or quality when they were, in fact, defective; and

c.      Nissan violated Minn. Stat. § 325D.44(13) by engaging in conduct which created a misunderstanding among Plaintiff and the Class members as to the quality and longevity of the CVTs and the Vehicles.

57.    Minnesota Statute § 325D.13 provides that "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."  Consumer protection laws of other states make similar conduct unlawful.

58.    By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. § 325D.13 and the similar laws of other states.

59.    Nissan knew that the CVTs were defective, posing serious safety risks to its customers and other drivers on the road, did not tell anyone about the defect, and continued to sell the defective CVTs.  The safety risk that accompanies a defective CVT, namely, an inability to accelerate and maintain control of the Vehicle while driving, is a material fact; had Plaintiff and the other Class members known about it, they would have either not purchased or leased the Vehicles or would have paid less for them.  Nissan violated Minn. Stat. § 325D.44 through this material omission.  Nissan's misrepresentations and omissions were made to the public at large, affecting thousands of Class members whose safety was

put at risk in driving Subject Vehicles and who were economically injured by having to pay for CVT repairs out-of-pocket.  As such, this is an appropriate action under the MPCFA.

60.    This action benefits the public by addressing this serious safety concern that affects drivers of the Subject Vehicles, as well as other drivers on the road who are at risk for accident or injury if they are driving near or behind a Subject Vehicle when it fails to accelerate.

61.    Nissan's deceptive scheme was carried out in Minnesota and affected Plaintiff and the Class members.

62.    Nissan failed to advise the public about what it knew about the defect in the CVTs.

63.    As a direct and proximate result of Nissan's deceptive conduct in violation of Minn. Stat. § 325D.44, *et seq*., Plaintiff and the Class members have been damaged.

<u>**COUNT II**</u>
**Asserted on Behalf of the Minnesota Class**
**(Violations of MPCFA, Minn. Stat. § 325F.68, *et seq*.)**

64.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

65.    Plaintiff, the Class members, and Nissan are all "persons" within the meaning of the MPCFA, Minn. Stat. § 325F.68.

66.    The Vehicles are "merchandise" within the meaning of the MPCFA, Minn. Stat. § 325F.68.

67.     Nissan engaged in deceptive practices related to the sale of its product, including (1) selling and leasing Subject Vehicles with defective CVTs; and (2) failing to disclose or concealing this known defect and risk, to the detriment of Plaintiff and the Class members.

68.     Nissan's deceptive scheme was carried out in Minnesota and affected Plaintiff and the Class members.

69.     Nissan intended that Plaintiff and Class members rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the CVTs, so that Plaintiff and the Class members would purchase the Subject Vehicles.

70.     Plaintiff and the Class members did, in fact, rely on the acts of concealment and omissions regarding the nature of the CVTs.

71.     Had Plaintiff and the Class members known about the defective CVTs, they either would not have purchased or leased the Subject Vehicles, or would have paid less for them.

72.     Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, allows individuals who have been injured through a violation of the MPCFA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

73.     Therefore, Nissan used unfair methods of competition and unfair or deceptive acts or practices in conducting its business.

74.     Through these deceptive statements and misleading omissions, Nissan violated Minn. Stat. § 325F.69 and proximately caused damage to Plaintiff and the Class members.

## COUNT III
### Asserted on Behalf of the Minnesota Class
### (Violations of Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67)

75.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

76.     Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Consumer protection laws of other states make similar conduct unlawful.

77.     Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

78.     By engaging in the conduct herein, Defendant violated and continues to violate Minn. Stat. § 325F.67 and the similar laws of other states.

79.     Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example:

a.      Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of the CVTs and the Vehicles;

b.      Defendant's fraud and misrepresentations by omission, of information about the defective nature of the CVTs in the Vehicles, the improper design of the CVTs in the Vehicles, and Defendant's knowledge of those defects; and

c.      Defendant's concealment of the true nature of its defective CVTs in the Vehicles.

80.     Defendant and its agents and distributors also made untrue, deceptive, and misleading assertions and representations about the Vehicles by making and repeating the various statements about the alleged quality of the Vehicles referenced herein.

81.     As a result of Defendant's conduct, Plaintiff and the Class members have suffered actual damages in that they purchased a Vehicle, as described herein.  The defective nature of the CVTs in the Vehicles renders the Vehicles useless.  There is an association between Defendant's acts and omissions as alleged herein and the damages suffered by Plaintiff and the Class members.

82.     As a result of Defendant's untrue, deceptive, and misleading assertions and representations about the Vehicles, Plaintiff and the Class members have and will continue to suffer damages that include not only the full cost to replace the Vehicles, but also include, without limitation, consequential and incidental damages.

83.     As a direct and proximate result of Defendant's unlawful acts described above, Plaintiff and the Class members have been injured and seek damages, as well as the declaratory and injunctive relief set forth below in the Prayer for Relief.

## COUNT IV
### Asserted on Behalf of the National and Minnesota Classes
### (Breach of Express Warranty)

84.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

85.     Plaintiff and the Class members seek to recover for Nissan's breach of express warranty under Minnesota law.

86.     The Warranty expressly provides that Nissan will cover any repairs related to defects in materials or workmanship, specifically including the engine, transmission, drivetrain, and restraint system, under its three-year, 36,000-mile limited vehicle warranty and five-year, 60,000-mile powertrain warranty on all of its Vehicles.

87.     The defects at issue in this litigation were present at the time of sale or lease to Plaintiff and the Class members.

88.     Moreover, the defect implicates serious safety concerns, which requires Nissan to fix the defect pursuant to Warranty, regardless of when the defect manifests.

89.     Nissan has received sufficient and timely notice of the breach of Warranty alleged herein.  Despite this notice and Nissan's knowledge, Nissan refuses to honor its Warranty, even though it knows of the inherent defect in the CVTs.

90.     In addition, Nissan has received, upon information and belief, hundreds of complaints and other notices from its customers nationwide advising it of the CVT defect.

91.     Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its Warranty, and Defendant has failed to do so.

92.     As a result of Nissan's breach of warranty, Plaintiff and the Class have suffered damages.

## COUNT V
**Asserted on Behalf of the National and Minnesota Classes**
**(Breach of Implied Warranty of Merchantability & Fitness)**

93.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

94.     Nissan's implied warranty of merchantability accompanied the sale of the Subject Vehicles.

95.     Nissan, by implication, warranted that the CVTs were not inherently defective and were of good and merchantable quality and fit for the ordinary purposes for which they were sold.

96.     The CVTs are not fit for their ordinary purpose because, *inter alia*, they are prone to substantial failure and malfunction, pose serious safety concerns, and, as to Plaintiff and myriad other Class members, have substantially failed and malfunctioned.

97.     The propensity for malfunction and attendant safety concerns rendered the CVTs and the Vehicles, at point of sale and at all times thereafter, defective and thus unfit for the ordinary purposes for which they were sold and are used.

98.     Through the conduct described herein, Nissan has breached its implied warranty of merchantability and is liable to Plaintiff and the Class members.

99.     Plaintiff and the Class members have sustained damages as a proximate result of Nissan's breach.

100.    As set forth herein, any effort by Nissan to disclaim or otherwise limit its responsibility for the defective CVTs was and is unconscionable under all of the circumstances.

101.    Plaintiff has timely provided notice to Nissan regarding the problems he experienced with the CVT and, notwithstanding such notice, Nissan has failed and refused to offer Plaintiff an effective remedy.

## COUNT VI
### Asserted on Behalf of the National and Minnesota Classes
### (Fraudulent Misrepresentation, Concealment, and Failure to Disclose)

102.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

103.    During the Class period, Defendant knowingly, fraudulently, and actively misrepresented, omitted, and concealed material facts from consumers relating to the quality of its Vehicles and warranty process.

104.    Defendant has a duty to disclose to Plaintiff and the Class members the actual quality of its Vehicles and the true nature of its warranty process.

105.    The misrepresentations, omissions, and concealments complained of herein were material and were made on a uniform and market-wide basis. As a direct and proximate result of these misrepresentations, omissions, and concealments, Plaintiff and the Class members have been damaged, as alleged herein.

106.    Plaintiff and the Class members reasonably and actually relied upon Defendant's representations, omissions, and concealments. Such reliance may also be imputed, based upon the materiality of Defendant's wrongful conduct.

107.    Based on such reliance, Plaintiff and the Class members purchased Defendant's Vehicles and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

108.    Had Plaintiff and the Class members been aware of the true nature of Defendant's business practices, they would not have purchased Vehicles from Defendant.

109.    Plaintiff and the Class members are entitled to damages and injunctive relief as claimed herein.

**COUNT VII**
**Asserted on Behalf of the National and Minnesota Classes**
**(Unjust Enrichment—Pled in the Alternative)**

110.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

111.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from Plaintiff and the Class members' purchases of the Vehicles.

112.    Defendant has voluntarily accepted and retained these profits and benefits, derived from Plaintiff and the Class members, with full knowledge and awareness that, as a result of its misconduct, Plaintiff and the Class members were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant, and that Plaintiff and the Class members, as reasonable consumers, expected.

113.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class members, at the expense of Plaintiff and the Class members.

114.    Plaintiff and the Class members seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class members pray for judgment against Defendant as follows:

a.    An Order certifying the proposed Class and appointing Plaintiff as Class representative and his undersigned counsel of record as Class counsel;

b.    All recoverable compensatory and other damages sustained by Plaintiff and the Class members;

c.    Actual and statutory damages for injuries suffered by Plaintiff and the Class members in the maximum amount permitted by applicable law;

d.    An Order permanently enjoining Defendant from engaging in the unlawful practices, as alleged herein;

e.    Statutory pre-judgment and post-judgment interest on any amounts;

f.    Payment of reasonable attorneys' fees and costs; and

g.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: November 7, 2017

By:    */s/ Melissa S. Weiner*
Melissa S. Weiner
Amy E. Boyle
Colin J. Pasterski
HALUNEN LAW
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
weiner@halunenlaw.com
boyle@halunenlaw.com
pasterski@halunenlaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Collingswood, NJ 08107-1909
Telephone: (610) 891-9880
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

*Attorneys for Plaintiff and the Class*